IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Booker Gattis, | Civil Action No.8:09-70-TLW-BHH |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Federal Bureau of Prison; Former Warden, M. Pettiford; Present Warden, D. Drew, FCI-Bennettsville; Luis Berrios, MD Clinical Director; Julia E. Berrios, MD Medical Officer FCI/FPC Bennettsville; H. Hanson, PAC; K. Wright, Head of Medical; Jump, Medical Supervisor; | |
| Defendants.[1] | |

The Plaintiff, a pro se prisoner, seeks relief pursuant to pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and under the Federal Torts Claim Act ("FTCA").[2] This matter is before the court on the Defendants' Motion for Summary Judgment. (Dkt. # 32.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

---

[1]The Defendant Dr. Farooq H. Qureshi was dismissed from this action on October 20, 2009. (Dkt. # 54.)

[2]In *Bivens*, the United States Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983 against state actors.

The Plaintiff brought this action on January 7, 2009.[3] On May 26, 2009, the Defendants filed a motion for summary judgment. By order filed May 27, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On June 29, 2009, the Plaintiff filed a response opposing the Defendants' summary judgment motion. (Dkt. # 41.)

## I. FACTS

**A. Complaint**

The Plaintiff is a federal inmate currently incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey. (Dkt. # 52 - Change of Address.) The allegations in his Complaint stem from his incarceration at the Federal Correctional Institution in Bennettsville, South Carolina, ("FCI-Bennettsville").

On January 15, 2007, the Plaintiff cut the pinky finger on his right hand while playing basketball. (Compl. at 2.) The Plaintiff alleges he was treated for his injury and received stitches which were removed on January 22, 2007. *Id.* On February 15, 2007, the Plaintiff alleges he was seen at a sick call complaining that his "finger was not healing, did not feel right and had no movements in the top portion . . ." *Id.* He alleges Dr. Luis Berrios told him there was no evidence of a fracture or other significant abnormality, *Id.* The Plaintiff alleges he repeatedly complained to the Defendants Hansen and Dr. L. Berrios and was told nothing was wrong with his finger although the pinky was "stuck at a $90^0$ angle." (Compl. at 3.)

---

[3]This date reflects the date that the envelope was postmarked. (Pet. Attach. #6.) *See Houston v. Lack,* 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

2

On March 8, 2007, the Plaintiff alleges that he signed up for a sick call complaining of pain and limited use of his pinky. *Id.* Hansen noted that the Plaintiff's condition warranted an MRI. On April 11, 2007, the Plaintiff notes that he was seen by an outside orthopedist, Dr. F.H. Qureshi. *Id.* The Plaintiff states that Dr. Qureshi diagnosed the Plaintiff with a laceration of the tendon and noted that it had not healed. *Id.* The Plaintiff alleges that his "pinky remains bent at a $90^0$ angle with very limited use and constant pain." (Compl. at 5.)

The Plaintiff alleges he is suing the Defendants for medical malpractice, negligence, and pain and suffering. (Ciompl. at 1.) Specifically, he alleges he is pursuing a claim under the Federal Torts Claim Act ("FTCA") against the Defendant the United States Federal Bureau of prisons ("BOP") for medical malpractice and disregarding the seriousness of the Plaintiff's injury and *Bivens'* claims against the Defendants Dr. L. Berrios, Dr. J. Berrios, Hansen, former Warden Pettiford, current Warden Drew, Wright, and JUMP Health Services Administrator. (Compl. at 5.) The Plaintiff is seeking actual and punitive damages. (Compl. 4.) Additionally, he is seeking corrective surgery and follow-up treatment and an award for lost future earnings and future medical bills. (Am. Compl. at 2.)

**B. Summary of the Plaintiff's Medical Records**

The Defendants have submitted a copy of the Plaintiff's pertinent medical records while the Plaintiff was housed at FCI- Bennettsville and a summary of those records follows. (Defs.' Mem. Opp. Summ. J. Mot. Ex.5.) On January 15, 2007, the Plaintiff was seen for injury to his right hand by the Defendant Hansen. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 1.) The Plaintiff had sustained a L-shaped flap laceration to the top of his right fifth finger over the joint with a .5 cm linear laceration on the bottom of his hand. *Id.* He was able to bend and straighten his fingers without resistance. *Id.* An x-ray revealed no fracture. *Id.* at 1-2. The Plaintiff received six stitches and he was given a splint for his

finger, a Tetanus shot, antibiotics to prevent infection, and Tylenol for pain. *Id.* He was also instructed to return the next morning for a follow-up exam. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 2.) Medical records do not indicate the Plaintiff returned the next morning. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5.)

On January 19, 2007, the Plaintiff was seen for a follow-up visit by the Defendant Dr. J. Berrios. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 3.) The Plaintiff had full range of motion in his finger. Id. The Defendant Dr. J. Berrios removed one suture and soaked the Plaintiff's hand in iodine to prevent infection. *Id.* She also gave him a shot of antibiotics and a prescription for antibiotics to prevent infection. *Id.* Dr. J. Berrios offered the Plaintiff pain medication, but the Plaintiff declined the medication stating he was not in any pain. *Id.* A new dressing was applied to the wound and the Plaintiff was told to return to medical the next day for another dressing change. *Id.*

On January 20, 2007, the Plaintiff returned to have the dressing changed. *Id.* An examination revealed no redness, swelling, or drainage. *Id.* On January 22, 2007, the Plaintiff returned to have his sutures removed. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 4.) An examination revealed swelling to the distal finger joint and it was noted that the Plaintiff was not able to bend it. *Id.* All sutures except one were removed. *Id.* The Plaintiff was instructed to finish his antibiotics and given Tylenol. *Id*. He was also told to return on Wednesday to have his last sutured removed. *Id.*

On January 25, 2007, Dr. J. Berrios wrote a consult for the Plaintiff to be seen by an orthopedic specialist because his right pinky finger did not appear to be healing properly. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 5.) On January 26, 2007, the Plaintiff was seen complaining of pus in his injured finger. *Id.* at 6. He stated he was not having pain, but it was irritating. *Id.* He was seen by a nurse who noted there was no drainage,

redness, or warmth. *Id.* Dr. J. Berrios also examined the Plaintiff's finger and instructed him to continue wearing the splint. *Id.*

On February 1, 2007, the Plaintiff was seen by the Defendant Dr. L. Berrios for a follow-up examination. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 7). Dr. L. Berrios noted that the Plaintiff had mild swelling in his finger, but no signs of infection. *Id.* Dr. L. Berrios instructed the Plaintiff to continue to wear his splint for the next four to five weeks as recommended telephonically by the orthopedist and to follow-up as needed or in three or four weeks. *Id.*

On February 15, 2007, the Plaintiff signed up for sick call stating his finger was still bothering him and not healing on the inside. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 8.) The Plaintiff was told he needed to see the physician and on February 23, 2007, the Plaintiff was seen by Dr. J. Berrios. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 9.) Dr. J. Berrios gave the Plaintiff a prescription for Naproxen. *Id.* On March 2, 2007, the Defendant Hansen saw the Plaintiff who complained his pain was a seven out of ten. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 10.) The Defendant Hansen thought the Plaintiff had a ruptured tendon and submitted a consultation for him to have an MRI or see an orthopedic specialist. *Id.* Defendant Hansen advised the Plaintiff to continue wearing his splint and taking the pain medication previously prescribed to him and return as needed. *Id.*

On March 8, 2007, Dr. L. Berrios noted that the Utilization Review Committee had approved for the Plaintiff to see the Orthopedic Specialist or have an MRI. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 10.) The consultation was forwarded to the Region for approval. *Id.*

On March 26, 2007, the Plaintiff was seen at sick call complaining that he was still having problems with his finger and he could no longer straighten it out. (Defs.' Mem.

Supp. Summ. J. Mot. Ex. # 5 at 11.) His examination revealed no drainage, discoloration, fever, or tenderness, and only slight swelling in his finger. *Id.* He was advised to follow-up with his next medical appointment. *Id.*

On April 11, 2007, the Plaintiff was seen by the orthopedist who diagnosed him with a torn tendon in his finger. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 13.) He recommended re-splinting the Plaintiff's finger until a determination could be made whether surgical intervention was needed. *Id.* On April 11, 2007, Dr. L. Berrios saw the Plaintiff and advised him regarding the care of his finger and the treatment plan. *Id.* On April 24, 2007, Dr. L. Berrios saw the Plaintiff for a follow-up examination. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 14.) An examination showed no swelling, no edema, and the Plaintiff was able to keep his pinky finger straight without a splint and without pain. *Id.* Dr. L. Berrios told the Plaintiff to continue wearing his splint for three to four weeks and he would be re-evaluated by the orthopedist in May. *Id.*

On May 23, 2007, the Plaintiff saw the orthopedist for a follow-up examination. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 16.) The examination indicated the Plaintiff had achieved excellent results with splinting since the finger was kept fully extended. *Id.* He was advised to begin range of motion exercises to his finger, soak in warm water twice a day, and return in a month. *Id.* On May 24, 2007, Dr. J. Berrios noted that the orthopedist had recommended the Plaintiff discontinue wearing his splint, begin range of motion exercises, and return to see him in four weeks.

On May 29, 2007, the Plaintiff did not show up for his follow-up evaluation. On June 4, 2007, the Plaintiff saw Dr. L. Berrios. The Plaintiff did not have any complaints at that time and an examination revealed no swelling, no pain and full extension. *Id.* The Plaintiff was instructed to continue taking Motrin for pain and doing the exercises given to him by the orthopedist. *Id.*

6

On June 28, 2007, the Plaintiff was seen for a follow-up visit by the orthopedist who noted the Plaintiff was not able to fully extend his finger out as previously noted in his last exam in May. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 18.) The orthopedist recommended surgical repair to the tendon. *Id.* On August 30, 2007, the orthopedist operated on the Plaintiff's finger and noted that a satisfactory repair was obtained. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 26.)

Dr. J. Berrios saw the Plaintiff on September 4, 2007, for a follow-up visit. The Plaintiff stated he was not in any pain and he was wearing his splint. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 24.) Dr. J. Berrios examined the Plaintiff's finger and he noted it was healing well and there were no signs of infection. *Id.* On September 12, 2007, the Plaintiff saw the orthopedist for a follow-up visit. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 27.) The orthopedist removed the Plaintiff's sutures and noted the wound was healing nicely. *Id.* He recommended the Plaintiff return in two weeks to have a pin removed. *Id.*

On October 9, 2007, the Plaintiff was again seen by the orthopedist. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 31.) The orthopedist noted that the Plaintiff had full extension of his pinky finger and advised him to begin gentle range of motion exercises with his finger. *Id.* The orthopedist informed the Plaintiff to gradually resume normal activities and that no further treatment was needed. *Id.* On October 23, 2007, Dr. J. Berrios saw the Plaintiff for a follow-up visit and it was noted that he stated he was in no pain and doing well. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 29.)

## II. **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

7

> there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### III. DISCUSSION

**A. Administrative Remedies and Statute of Limitations**

8

The Defendants concede that the record reflects that the Plaintiff has exhausted his administrative remedies with respect to the *Bivens* claims he alleges in his Complaint. (Defs.' Mem. Supp. Summ. J. Mot. At 7.)[4] However, the Defendants contend that the Plaintiff's claims alleges under the FTCA are barred by the statute of limitations. The undersigned agrees.

The Administrative Remedy Program of the BOP, codified in 28 C.F.R. § 542.10(a), sets out a four-step process of exhaustion required for federal inmates prior to commencing an action in the United States District Court. First, the inmate must attempt to informally resolve the complaint with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is not successful, the inmate must file a formal written complaint to the Warden. This complaint must be filed within twenty (20) days from the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, that response must be appealed to the Regional Director within twenty (20) calendar days from the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). Only after the completion of all four of these steps is an inmate allowed to file an action in the United States District Court.

Furthermore, under the FTCA, a "claim against the United States shall be forever barred unless it is . . . begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim. . . ." 28 U.S.C. § 2401(b). This statute of limitations is a jurisdictional requirement and "the circumstances of its waiver must be

---

[4]The Defendants also correctly point out that the Plaintiff exhausted his administrative remedies prior to the surgery he underwent on August 30, 2007. (Defs.' Mem. Supp. Summ. J. Mot. at 7 n. 2.)

9

scrupulously observed and not expanded by the courts." *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000).

On June 11, 2007, the Southeast Regional Counsel Office received an administrative tort claim from the Plaintiff in which he alleged the medical staff at FC-Bennettsville were negligence and failed to provide him with roper medical care resulting in the deformity and permanent disability of his right pinky finger. (Defs.' Mem. Supp. Summ. J. Mot. Ex. #3.) On November 16, 2007, this claim was denied and the Plaintiff was notified of the denial of his administrative tort claim via certified letter. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 4.) The Plaintiff had until May 17, 2008, to timely file a claim in District Court. The Plaintiff did not file this lawsuit until January 9, 2009, almost eight months after the six month statute of limitations had lapsed.

The Plaintiff's FTCA claims, therefore, are barred under 28 U.S.C. § 2401(b) because he did not file this claim "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim." Alternatively, the undersigned recommends the claim be denied on the merits as discussed below.

**B. Merits of FTCA Claims**

The FTCA provides a limited waiver of sovereign immunity that enables parties that are injured by an agent of the United States to obtain relief. As an initial matter, the undersigned notes that the United States is the only proper defendant to a FTCA claim. *Holmes v. Eddy*, 341 F.2d 477 (4th Cir. 1965)(holding that federal agencies cannot be sued under the FTCA); *see also* 28 U.S.C. § 1346(b) (conferring jurisdiction on courts for tort claims "against the United States").

Under the FTCA, federal courts are directed to determine liability based upon an analysis under state law. Since the medical negligence allegedly occurred in South Carolina, the substantive law of South Carolina controls. *See United States v. Neustadt*, 366 U.S.

10

696, 706 n. 15 (1961). Accordingly, the claims relating to care provided should be evaluated in accordance with South Carolina tort law.[5]

In South Carolina, a plaintiff alleging a medical malpractice claim must proved by a preponderance of the evidence the following:

> (a) The recognized and generally accepted standards, practices, and procedures in the community which would be exercised by competent physicians in the same speciality under similar circumstances;
>
> (b) that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;
>
> (c) that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
> (d) that the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000) (internal citations omitted). Furthermore, the plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795, 799 (S.C. Ct.App. 2005)(*citing Gooding v. St. Francis Xavier Hosp.*, 487 S.E.2d 596, 599 (S.C. 1997)). "In addition to proving the defendant negligent, the plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury." *Carver v. Med. Soc'y of S.C.*, 334 S.E.2d 125, 127 (S.C. Ct.App. 1985). Finally, the undersigned notes that, in South Carolina, the burden of proof in a medical malpractice case is entirely upon the plaintiff. *Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000).

---

[5]Under lex loci delicti, the applicable state substantive law is the law of the "place of the wrong." Courts have interpreted "the place of the wrong," for purposes of lex loci delicti, as the place where "the last event necessary to make an [actor] liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (*quoting Miller v. Holiday Inns, Inc.*, 436 F.Supp. 460, 462 (E.D. Va.1977)).

Here, the Plaintiff has failed to establish a claim under the FTCA. The Plaintiff has not set forth any evidence, except for his own conclusory allegations, that the Defendants failed to conform to a required standard or were negligent, and the Plaintiff has failed to establish any causal link between the alleged negligence and any injury. In short, the Plaintiff has utterly failed in his burden of proof. Therefore, it is recommended that the Defendants be granted summary judgment with respect to the Plaintiff's FTCA claims.

### C. *Bivens* Claims

In his *Bivens* claims, the Plaintiff alleges that the Defendants were deliberately indifferent to his serious medical needs. The Defendants contend that the Plaintiff has failed to state a claim of deliberate indifference. The undersigned agrees.

Initially, the undersigned notes that the BOP should be dismissed. In *Bivens,* the Court recognized a cause of action against federal officers in their individual capacity for an alleged violation of a plaintiff's constitutional rights. However, there is no cause of action pursuant to *Bivens* against individuals in their official capacities, private corporations, federal agencies, or the United States. *See Correctional Serv. Corp. v. Malesko*, 534 U.S. 61, 71 (2001)(A federal prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir.1996) (stating no remedy under *Bivens* against the federal government exists, just against federal officials individually). Thus, this court lacks jurisdiction over the Plaintiff's *Bivens* claims against the defendants in their official capacities, and sovereign immunity deprives this court of subject matter jurisdiction under *Bivens* over the BOP. Accordingly, the BOP should be dismissed.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose

12

"that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In *Miltier,* the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

First, as to any claims against the Defendants Pettiford, Drew, Wright, and Jump, the Plaintiff has failed to allege or present any evidence showing any personal involvement of these defendants in the alleged violations of his constitutional rights. In a *Bivens* proceeding, liability is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.2d 391, 402 (4th Cir. 2001). Thus, in order to establish liability in a *Bivens* case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. *Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir.1994). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. *Zatler v. Wainbright*, 802 F.2d 397, 401 (11th Cir.1986).

13

Further, "[i]n a Bivens suit, there is no respondeat superior liability." *Trulock,* 275 F.2d at 402 (*citing Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

In this case, reviewing the complaint, the undersigned finds that the plaintiff has failed to allege any personal involvement on the part of the Defendants Pettiford, Drew, Wright, and Jump. (Compl.) Accordingly, these Defendants should be dismissed.[6] Furthermore, the record clearly demonstrates that none of the Defendants have treated him indifferently as discussed below.

The Plaintiff's medical records establish that the Plaintiff was provided with the medical care and treatment from the time he first injured his finger on January 15, 2007. The Plaintiff was seen the day of the injury and received stitches and he was given a splint for his finger, a Tetanus shot, antibiotics to prevent infection, and Tylenol for pain. (Defs.' mem. Supp. Summ. J. Mot. Ex. # 5 at 1-2.) He was also instructed to return the next

---

[6]Furthermore, the Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the Plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his course of medical treatment against the Defendants.

Furthermore, to the extent the Plaintiff relies on the doctrine of supervisory liability against these Defendants, the Plaintiff has failed to make any showing of supervisory liability. It is well-established that a plaintiff must allege the personal involvement of a defendant to state a claim under § 1983. *See, e.g., Monell v. Dept. of Social Svs.,* 436 U.S. 658, 691-92 (1978). To hold a supervisor liable for a constitutional injury inflicted by a subordinate under § 1983, the plaintiff must allege facts establishing: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir .1994). Thus, in a medical indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison doctor's performance, or was indifferent to a prison doctor's constitutional violation. *Miltier,* 896 F.2d 848 at 854. The Plaintiff has not done this.

morning for a follow-up exam which he failed to do. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 2.) On January 19, 2007, the Plaintiff was seen for a follow-up visit by the Defendant Dr. J. Berrios. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 3.) The Plaintiff had full range of motion in his finger and Dr. J. Berrios removed one suture and soaked the Plaintiff's hand in iodine to prevent infection. *Id.* She also gave him antibiotics. *Id.* Dr. J. Berrios offered the Plaintiff pain medication, but he declined stating he was not in any pain. Id. A new dressing was applied to the wound and the Plaintiff was told to return to medical the next day for another dressing change. *Id.*

On January 20, 2007, the Plaintiff had his dressing changed and his examination revealed no redness, swelling, or drainage. *Id.* On January 22, 2007, the Plaintiff had most of his sutures removed. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 4.) The Plaintiff was instructed to finish his antibiotics and given Tylenol. *Id.* He was also told to return to have his last sutured removed. *Id.*

Within ten days of the injury, on January 25, 2007, Dr. J. Berrios sought a consultation for the Plaintiff because the Plaintiff's finger did not appear to be healing properly. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 5.) The Plaintiff was seen on January 26, 2007, complaining of pus in his injured finger. *Id.* at 6. He stated he was not having pain, but it was irritating. *Id.* He was seen by a nurse who noted there was no drainage, redness, or warmth. *Id.* Dr. J. Berrios also examined the Plaintiff's finger and instructed him to continue wearing the splint. *Id.* On February 1, 2007, the Plaintiff was seen by the Defendant Dr. L. Berrios for a follow-up examination. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 7). Dr. L. Berrios noted that the Plaintiff had mild swelling in his finger, but no signs of infection and he instructed the Plaintiff to continue to wear his splint for the next four to five weeks

On February 23, 2007, the Plaintiff was seen by Dr. J. Berrios. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 9.) Dr. J. Berrios gave the Plaintiff a prescription for Naproxen.

15

*Id.* On March 2, 2007, the Defendant Hansen saw the Plaintiff who complained his pain was a seven out of ten. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 10.) The Defendant Hansen thought the Plaintiff had a ruptured tendon and submitted a consultation for him to have an MRI or see an orthopedic specialist. *Id.* Defendant Hansen advised the Plaintiff to continue wearing his splint and taking the pain medication and return as needed. *Id.*

On March 8, 2007, Dr. L. Berrios noted that the Utilization Review Committee had approved for the Plaintiff to see the Orthopedic Specialist or have an MRI. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 10.) The consultation was forwarded to the Region for approval. *Id.*

On April 11, 2007, the Plaintiff was seen by the orthopedist who diagnosed him with a torn tendon in his finger. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 13.) He recommended re-splinting the Plaintiff's finger for another four or five weeks to see if splinting would correct the flexion. *Id*. The orthopedist noted that if the splint course was not successful, surgery might be beneficial. On May 23, 2007, the orthopedist examined the Plaintiff and stated that the splinting had provided the Plaintiff with an excellent result. *Id.* at 16. He recommended range of motion exercises and would re-evaluate the Plaintiff in four weeks. *Id*.

Ultimately, however, the re-splinting was unsuccessful and on June 289, 2007, the orthopedist determined that the Plaintiff needed surgery. *Id.* at 20. On August 30, 2007, the Plaintiff underwent surgery to repair the tendon in his finger. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 5 at 26.) Following surgery, on October 10, 2007, the orthopedist noted that the Plaintiff had full extension of his finger and no further treatment was needed. *Id*. at 31.

Although the Plaintiff argues he should have had an MRI earlier, the orthopedist did not mention the need for an MRI. The orthopedist recommended a conservative approach of re-splinting the Plaintiff's finger for several weeks. The Plaintiff has shown nothing more

16

than a disagreement with the medical treatment provided by the Defendants, not that he was denied medical treatment.[7] The voluminous medical records show that the Plaintiff has received continuous and ongoing treatment for his complaints and that following his surgery on August 30, 2007, his finger had healed successfully. The undersigned cannot find that the Defendants' treatment of the Plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Estelle,* 429 U.S. at 105.

At best, the Plaintiff has alleged a delay in treatment. However, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. at 1037. The Plaintiff has failed to present any medical evidence to show that any such delay in his treatment has caused him a life-long handicap or permanent loss. Accordingly, the Defendants' motion to dismiss should be granted.

### D. State Law Claims

To the extent that the Plaintiff's complaint states additional claims under state law, (i.e. medical malpractice or negligence), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the Plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

### IV. CONCLUSION

Wherefore, it is RECOMMENDED that the defendants Motion for Summary Judgment (Dkt. # 32) be GRANTED and that the action be DISMISSED with prejudice.

---

[7] The undersigned notes that the defendants do not challenge plaintiff's assertion that he suffers from a serious medical need.

17

IT IS SO RECOMMENDED.

                                        Bruce Howe Hendricks
                                        United States Magistrate Judge

November 24, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).